# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

|  |  |
|---|---|
| CMS CONTRACT MANAGEMENT SERVICES, et al., ) ) ) ) Plaintiffs, ) ) v. ) ) ) THE UNITED STATES OF AMERICA ) ) Defendant. ) ) | Nos. 12-852C, 12-853C, 12-862C, 12-864C & 12-869C (Judge Wheeler) |

## MASSACHUSETTS HOUSING FINANCE AGENCY'S SUPPLEMENTAL BRIEF

Andrew Mohr
Gabriel E. Kennon
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW, Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)
gkennon@cohenmohr.com

Counsel of Record for Intervenor
Massachusetts Housing Finance Agency

Date: March 15, 2013

**TABLE OF CONTENTS**

**PAGE**

I. SUMMARY ARGUMENT ........................................................................................ 1

II. THE HOUSING ACT EXPRESSLY AUTHORIZES HUD TO
CONTRACT WITH PHAS TO ADMINISTER ITS SECTION 8
PROGRAM .................................................................................................................. 2

III. UNDER CICA, AN AGENCY MAY USE OTHER THAN
COMPETITIVE PROCEDURES WHEN EXPRESSLY
AUTHORIZED BY STATUTE................................................................................... 6

    A.    CICA's Savings Clause Allows HUD to Procure HAP Contract
Administrative Services without Full and Open Competition ......................... 6

    B.    CICA Allows HUD To Procure HAP Contract Administration
Services From Specific Sources ....................................................................... 8

IV. EVEN IN A PROCUREMENT USING COMPETITIVE PROCEDURES
UNDER CICA, HUD MAY STILL LIMIT COMPETITION TO PHAS ................. 10

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Alinsky v. United States*, 415 F.3d 639 (7th Cir. 2005) .............................................................. 4

*Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008) ............................................................... 5, 11

*Burlington Air Express, Inc.*, ASBCA No. 39168, 90-2 BCA ¶ 22708 ................................ 4, 5

*Corel Corporation v. United States*, 165 F. Supp. 2d 12 (D.D.C. 2001) ................................. 8

*Grigsby Brandford & Co., Inc. v. United States*, 869 F. Supp. 984 (D.D.C. 1994).................. 9

In *NISH; Goodwill Services, Inc. v. Cohen*, 247 F.3d 197 (4th Cir. 2001).................... 3, 4, 7, 8

*NISH and RCI, Inc. v. Rumsfeld*, 188 F. Supp. 2d 1321 (D.N.M. 2002) ............................... 8, 9

*Peters v. United States,* 694 F.2d 687 (Fed. Cir. 1982)............................................................. 3

*Peters v. United States*, 1981 WL 30812 (Fed. Cl. Aug. 5, 1981) ............................................ 3

*Rapides Regional Medical Center v. Department of Veterans' Affairs*,
   974 F.2d 565 (5th Cir. 1992)................................................................................................. 7

*Savantage Financial Services, Inc. v. United States*, 86 Fed. Cl. 700 (2009)......................... 10

*Stapp Towing Co., Inc.*, ASBCA No. 41585, 92-3 BCA ¶ 25190............................................. 4

*United States v. Corliss Steam-Engine Co.*, 91 U.S. 321 (1875) .............................................. 3

*Woods v. Leeds Housing Authority*, 2010 WL 8781972 (N.D. Al. 2010)................................. 6


**STATUTES AND REGULATIONS**

20 U.S.C. § 107 ......................................................................................................................... 7

41 U.S.C. § 3301(a)............................................................................................... 2, 6, 7, 8, 9

41 U.S.C. § 3304(a)(5) ............................................................................................... 2, 8, 9, 9

# **TABLE OF AUTHORITIES**

**PAGE**

41 U.S.C. § 3304(e)(4) ...................................................................................................... 9

42 U.S.C. § 1437a(b)(6)(A) ......................................................................................... 5, 10

42 U.S.C. § 1437f(b)(1) ................................................................................... 1, 2, 3, 10, 11

42 U.S.C. § 1437f(b)(2) .......................................................................................... 1, 2, 3, 10

42. U.S.C. § 6961 .............................................................................................................. 9

Housing and Urban Recovery Act of 1983, Pub. L. No. 98-181,
   § 209(a)(2), 97 Stat. 1153, 1183 (1983) .................................................................... 2

24 C.F.R. § 880.101(a) ........................................................................................ 5, 6, 10, 11

FAR § 6.302-5 ................................................................................................................... 9

FAR § 6.302-5(a) ......................................................................................................... 9, 10

FAR § 6.302-5(a)(2) .......................................................................................................... 9

FAR § 6.302-5(b) .............................................................................................................. 9

FAR § 6.302-5(c) ............................................................................................................. 10

FAR § 6.302-5(c)(2)(ii) ..................................................................................................... 9

FAR § 11.002(a)(1)(ii) .................................................................................................... 10

## **COMPTROLLER GENERAL DECISIONS**

*ASC Group, Inc.*, B-407136, Nov. 15, 2012, 2012 CPD ¶ 318 .............................................. 10

*Monterey City Disposal Service, Inc.*, B-218624, B-218880, Sept. 3, 1985,
   85-2 CPD ¶ 261, *aff'd*, B-218624-2, B-218880.2, 85-2 CPD ¶ 306 .................................. 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| CMS CONTRACT MANAGEMENT SERVICES, et al., <br><br>　　　　Plaintiffs, <br><br>v. <br><br>THE UNITED STATES OF AMERICA <br><br>　　　　Defendant. | Nos. 12-852C, 12-853C, 12-862C, <br> 12-864C & 12-869C <br><br> (Judge Wheeler) |

**MASSACHUSETTS HOUSING FINANCE AGENCY'S SUPPLEMENTAL BRIEF**

Intervenor Massachusetts Housing Finance Agency ("MassHousing"), an agency of the Commonwealth of Massachusetts, through counsel, files this supplemental brief pursuant to the Court's March 5, 2013 Order (docket entry 83). MassHousing's brief addresses only the issue of whether the Department of Housing and Urban Development ("HUD") has a statutory basis on which to limit competition for HAP contract administration services contracts to Public Housing Agencies ("PHAs"). For the reasons stated herein, the Court should find that HUD has statutory authority to limit competition to PHAs.

**I.      SUMMARY ARGUMENT**

The statutory basis for HUD's limitation of competition under the NOFA to PHAs is the Housing Act and the Competition in Contracting Act. The Housing Act, 42 U.S.C. §§ 1437f(b)(1) and 1437f(b)(2), authorizes HUD to contract with PHAs to effectuate HUD's Section 8 project based housing programs. HUD's authority to contract with PHAs to make assistance payments to owners necessarily includes the authority to contract with PHAs to administer the Housing Assistance Payment ("HAP") contracts under which that assistance is

1

made.

In conjunction with the Housing Act, the Competition in Contracting Act ("CICA"), 41 U.S.C. §§ 3301(a) and 3304(a)(5), authorizes HUD to procure services without full and open competition when authorized by another statute (such as the Housing Act).  CICA also allows HUD, even when using fully competitive procedures, to include in a solicitation reasonable qualifications and restrictions that are rationally related to HUD's programmatic needs.  HUD's decision to limit competition for HAP contract administrative services to PHAs is thus squarely based on statute, and is a reasonable and rational exercise of HUD's discretion implementing the Section 8 housing program.

## II.    THE HOUSING ACT EXPRESSLY AUTHORIZES HUD TO CONTRACT WITH PHAS TO ADMINISTER ITS SECTION 8 PROGRAM.

HUD's authority under the Housing Act to contract with PHAs to make assistance payments provides HUD the statutory basis on which to procure HAP contract administration services in support of making assistance payments.  Because HUD has based its authority to enter both the HAP and HAP contract administration services contracts on the Housing Act, HUD has properly limited the solicitation of contract administration services to PHAs.

The Housing Act provides, "The Secretary is authorized to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payment to owners of existing dwelling units in accordance with this section."  42 U.S.C. § 1437f(b)(1).  Prior to its repeal, 42 U.S.C. § 1437f(b)(2) of the Housing Act stated, "The Secretary may also enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners or prospective owners."  42 U.S.C. § 1437f(b)(2), *repealed by* Housing and Urban Recovery Act of 1983, Pub. L. No. 98-181, § 209(a)(2), 97 Stat. 1153, 1183

(1983). Accordingly, regardless of whether authority is based on § 1437f(b)(1) or § 1437f(b)(2), the Housing Act authorizes HUD to contract with PHAs to make assistance payments to owners pursuant to HAP contracts.

By authorizing HUD to enter into HAP contracts with PHAs, the Housing Act also gives HUD the ability to procure administration services in support of HAP contracts. A statute that authorizes an agency to perform a function necessarily gives the agency the authority to contract in support of that function. *Peters v. United States*, 1981 WL 30812, at *13 (Fed. Cl. Aug. 5, 1981) (holding that because "Congress has authorized the Secretary of Agriculture to appraise and sell timber," the agency "has inherent authority to enter into contracts for the sale of timber"), *aff'd in relevant part, rev'd on other grounds*, 694 F.2d 687 (Fed. Cir. 1982); *see also United States v. Corliss Steam-Engine Co.*, 91 U.S. 321 (1875). In this case, the Housing Act authorizes HUD to provide assistance payments through PHAs, and therefore HUD has the inherent authority to enter HAP contract administration services contracts in support of that function.

Furthermore, HUD has specifically invoked the Housing Act as the authority to solicit HAP contract administration services to further its goal of providing assistance payments to owners. AR 1359 (citing to Housing Act as authority pursuant to which HUD is soliciting HAP contract administration services). HUD's decision to base its acquisition of HAP contract administration services on the Housing Act is entitled to deference because the HAP contract administration services are reasonably encompassed by that statute. In *NISH; Goodwill Services, Inc. v. Cohen*, 247 F.3d 197 (4th Cir. 2001), the Court found that the agency reasonably determined that a mess hall was a "vendor facility" under the Randolph-Sheppard Act ("RS Act"), and therefore the agency could properly limit the procurement pursuant to the

3

terms of the RS Act.  As stated by the Court:

> The rule to be applied here is that enunciated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). When a statute, in this instance, the RS Act, "is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* Accordingly, when an agency determination that is entitled to deference is being challenged—as in this case—we defer to the agency's interpretation if it "give[s] reasonable content to the statute's textual ambiguities." *Department of Treasury, IRS v. FLRA,* 494 U.S. 922, 933, 110 S.Ct. 1623, 108 L.Ed.2d 914 (1990). A reviewing court may not second-guess the wisdom of the agency's reasonable policy choice. *Chevron,* 467 U.S. at 866, 104 S.Ct. 2778.

*Nish v. Cohen*, 247 F.3d at 201-02.  Similarly here, HUD's procurement of HAP contract administration services from PHAs is permissibly within the bounds of the Housing Act's authorization for HUD to contract with PHAs to make assistance payments to owners, and therefore HUD's determination to procure such services from PHAs is entitled to deference.

HUD's decision to base its contractual authority to enter the HAP contract administration services contracts on the Housing Act is consequential because the Housing Act authority delineates and defines the manner in which the contract administration services are provided. *See Alinsky v. United States*, 415 F.3d 639, 644 (7th Cir. 2005) (holding that a statute that authorized the FAA to contract with states for air control services did not govern the particular contract at issue because the FAA had based the contract on a statute granting the FAA general contracting authority); *see also Burlington Air Express, Inc.*, ASBCA No. 39168, 90-2 BCA ¶ 22708, *vacated by agreement of parties* Fed. Cir. (No. 90-1373) (determining that the Board did not have jurisdiction over a contract because the Navy had acquired the services under the Interstate Commerce Act ("ICA") and therefore the ICA, rather than the Contract Disputes Act, provided the appropriate mechanism for dispute resolution).  *But see Stapp Towing Co., Inc.*,

4

ASBCA No. 41585, 92-3 BCA ¶ 25190 (denying a claim that the Board did not have jurisdiction over an ICA matter in accordance with *Burlington* on the basis that "the agreements were not entered into pursuant to the ICA").

Regardless of which Section 8 provision of the Housing Act provides HUD with the authority to enter annual contributions contracts, PHAs are authorized to perform the required services if HUD is not itself performing the services. As stated in 24 C.F.R. § 880.101(a), "The assistance may be provided . . . either directly from HUD or through public housing agencies." To the extent such assistance is monetary, the HAP contract administration services contracts require that PHAs disburse the funds to the owners. AR 1383. If the assistance is non-monetary, the HAP contract administration services contracts require the PHAs to assist the owners by performing tasks such as making special rental adjustments and determining rent appeals.[1] AR 1381. Accordingly, the HAP contract administration services contracts require the PHAs to perform certain tasks that the Housing Act authorizes HUD or a PHA to perform. Therefore, the HAP contract administration services contracts are properly limited to only PHAs because the contracts are effectuating the tasks authorized by the Housing Act.

In addition, the HAP contract administration services contracts require PHAs to engage in governmental activities, so HUD is justified in limiting participation to PHAs, which are state-authorized entities. *See* 42 U.S.C. § 1437a(b)(6)(A). For example, PHAs provide the first-level review of owner appeals of a PHA's rent adjustment decision. Under other HUD housing programs, a PHA's determination of a participant's legal rights is similar to a governmental action that requires certain due process considerations. *See Basco v. Machin*, 514 F.3d 1177, 1183-84 (11th Cir. 2008) (holding that a PHA has the burden of persuasion in an

---

[1] The PHA's performance of these tasks does not convert the HAP contract administration services contracts into a grant or cooperative agreements because the primary purpose of the contracts remains the provision of contract administration services.

informal administrative hearing "to determine whether a Section 8 [voucher] participant's housing subsidy should be terminated"); *see also Woods v. Leeds Housing Authority*, 2010 WL 8781972, at *2 (N.D. Al. 2010) (recommending an injunction because there was evidence that the PHA had violated plaintiff's due process in terminating plaintiff's participation in the tenant-based program). The governmental nature of some of the performance based tasks under the HAP contract administration services contracts is representative of HUD's reliance on PHAs to implement and administer HUD's various public housing programs. *See generally* 24 C.F.R. Parts 880, 881, 941, 982. Accordingly, the structure of the Housing Act authorizes HUD to award HAP contract administration services contracts to PHAs because PHAs act in certain governmental manners that are inconsistent with contract administrative services typically procured by agencies from private parties.

### III. UNDER CICA, AN AGENCY MAY USE OTHER THAN COMPETITIVE PROCEDURES WHEN EXPRESSLY AUTHORIZED BY STATUTE.

CICA, with certain exceptions, requires full and open competition in government contracting. One of the exceptions to the requirement for competitive procedures is an agency's express statutory authorization to use alternative procurement procedures. The express statutory authorization exception is stated twice in CICA, first in CICA's "savings clause" and then in the CICA section on sole-source justifications. Either or both of these express statutory authorization exceptions allows HUD to procure HAP contract administration services under CICA from PHAs only.

#### A. CICA's Savings Clause Allows HUD to Procure HAP Contract Administrative Services without Full and Open Competition.

CICA's "savings clause" allows HUD to acquire HAP contract administration services using other than competitive procedures. Specifically, 41 U.S.C. § 3301(a) provides that HUD is not required to use competitive procedures when other procurement procedures are expressly

6

authorized by statute:

> **(a) In general.** — Except as provided in sections 3303, 3304(a), and 3305 of this title and *except in the case of procurement procedures otherwise expressly authorized by statute*, an executive agency in conducting a procurement for property or services shall—
>
> **(1)** obtain full and open competition through the use of competitive procedures in accordance with the requirements of this division and the Federal Acquisition Regulation . . . .

41 U.S.C. § 3301(a) (boldface type in original, italics added).

In *Rapides Regional Medical Center v. Department of Veterans' Affairs*, 974 F.2d 565 (5th Cir. 1992), a medical center sued to enjoin the VA's purchase of equipment under a cost sharing agreement with a private hospital pursuant to 38 U.S.C. § 8153, which authorized the VA to enter into cost sharing agreements for the acquisition and joint use of advanced medical technology. After finding that the VA's purchase of the equipment under 38 U.S.C. § 8153 was not a procurement under CICA, the Court found that even if the transaction was a procurement under CICA, it would be exempt from CICA's competition requirements:

> Finally, even assuming that the VAMC–Cabrini sharing agreement is a "procurement" for purposes of CICA, we are persuaded that 38 U.S.C. § 8153, which authorizes the VA to enter into such arrangements, is a procurement procedure "expressly authorized by statute" within the meaning of CICA § 253(a)(1)[now § 3301(a)] and therefore is not subject to the Act's full and open competition requirements.

*Rapides,* 974 F.2d at 574.

Likewise, in *NISH; Goodwill Services, Inc. v. Cohen*, 247 F.3d 197 (4th Cir. 2001), NISH sought to enjoin the application of the Randolph–Sheppard Act ("RS Act") to the operation of mess hall facilities. The RS Act, 20 U.S.C. § 107, provides the blind with a priority to operate vending facilities on federal property. The Court found that the provisions of the RS Act, which "authorizes the Secretary of [the Department of Education] to secure 'the

7

operation of cafeterias on Federal property by blind licensees . . . whether by contract or otherwise,'" was a procurement procedure encompassed by CICA's savings clause under Section 41 U.S.C. §3301(a).  *NISH v. Cohen*, 247 F.3d at 204; *see also NISH and RCI, Inc. v. Rumsfeld*, 188 F. Supp. 2d 1321 (D.N.M. 2002) (finding the RS Act a procurement statute exempt from CICA's requirement for full and open competition under CICA's savings clause).

In *Corel Corporation v. United States*, 165 F. Supp. 2d 12 (D.D.C. 2001), the Court considered whether an agency's decision to standardize its office software was a procurement under CICA.  In discussing the applicability of CICA, the Court referenced CICA's savings clause as exempting procurements from CICA's competition requirements:

> The second way for an agency to exempt itself from CICA is to procure goods or services in accordance with another federal procurement statute. In a savings clause, CICA specifies that its open competition requirements do not apply "in the case of procurement procedures expressly authorized by statute." 41 U.S.C. § 253(a)(1). Thus, the exceptions contained in CICA itself and those contained in other procurement statutes "are separate and distinct routes which an agency may pursue without compliance with the full and open competition requirement." *National Gateway Telecom, Inc. v. Aldridge,* 701 F.Supp. 1104, 1113 (D.N.J.1988), *aff'd,* 879 F.2d 858 (3d Cir.1989).

*Corel,* 165 F. Supp. 2d at 19.  In this case, the Housing Act authorizes HUD to enter into HAP contracts with PHAs.  That statutory authority allows HUD to bypass CICA's competition requirements and limit its procurement of HAP contract administration services to PHAs.

### B.     CICA Allows HUD To Procure HAP Contract Administration Services From Specific Sources.

In addition to the CICA savings clause, CICA's sole source provisions also allow HUD to procure services, such as HAP contract administration services, without full and open competition.  Specifically, 41 U.S.C. § 3304(a)(5) allows sole source procurements when conducted under separate statutory authority:

8

> **(a) When noncompetitive procedures may be used.** — An executive agency may use procedures other than competitive procedures only when—
>
> > **(5)** subject to section 3105 of this title, *a statute expressly authorizes or requires that the procurement be made through another executive agency or from a specified source*, or the agency's need is for a brand-name commercial item for authorized resale . . . .

41 U.S.C. § 3304(a)(5) (boldface type in original, italics added); *see also* FAR § 6.302-5(a)(2) (implementing 41 U.S.C. § 3304(a)(5)); FAR § 6.302-5(b) (listing several statutes exempt from CICA's competition requirements).[2] Depending on whether the other procurement statute mandates or authorizes the agency to contract with a specified source, this CICA exception may require the agency to support its use through a written justification. 41 U.S.C. § 3304(e)(4); FAR § 6.302-5(c)(2)(ii).

In *Monterey City Disposal Service, Inc.*, B-218624, B-218880, Sept. 3, 1985, 85-2 CPD ¶ 261, *aff'd*, B-218624-2, B-218880.2, 85-2 CPD ¶ 306, the GAO found that CICA's specified source exception applied through the Solid Waste Disposal Act, 42. U.S.C. § 6961, which required agencies to comply with local solid waste disposal requirements. The GAO rejected the Navy's argument that the Solid Waste Disposal Act did not apply in the absence of express

---

[2]   In *NISH v. Cohen,* 247 F.3d 197, NISH argued that the RS Act was not encompassed by CICA's savings clause because it is not listed in the exceptions to CICA set forth in FAR § 6.302-5, which includes a specific reference to NISH's authorizing statute. The Court found that the inclusion of the phrase "such as the following" before listing the statutes excepted made clear that the "list is not exhaustive." *NISH*, 247 F.3d at 204 n.7.

The Court's reference in *NISH v. Cohen* to both the CICA savings clause and FAR § 6.302-5(a), however, also reflects the occasional precedential conflation of 41 U.S.C. § 3301(a) and 41 U.S.C. § 3304(a)(5). Although the savings clause at 41 U.S.C. § 3301(a) has been interpreted as removing transactions in their entirety from CICA, *Grigsby Brandford & Co., Inc. v. United States*, 869 F.Supp. 984 (D.D.C. 1994), it has more often been used to justify the exemption of a procurement from CICA's requirement for full and open competition, *see NISH v. Cohen,* 247 F.3d 197.

9

congressional intent in that legislation to allow sole source contracting.

Here, the Housing Act allows HUD to contract with a specific source, namely, PHAs. Both 42 U.S.C. §§ 1437f(b)(1) and (b)(2) authorize HUD to contract with PHAs to implement the Section 8 program, which certainly includes the authority to contract for the calculation and transmission of HAP contract payments, and necessarily includes the authority to contract for the administration of HAP contacts.  HUD's decision to limit competition for HAP contract administration services to PHAs is supported by the Housing Act and CICA sole source exception.[3]

## IV. EVEN IN A PROCUREMENT USING COMPETITIVE PROCEDURES UNDER CICA, HUD MAY STILL LIMIT COMPETITION TO PHAS.

Even if the Court were to find that the Housing Act in conjunction with either the CICA savings clause or CICA statutory sole-source exception do not provide a statutory basis for limiting competition to PHAs, HUD is permitted to limit awards to PHAs under CICA. Agencies are permitted to include restrictive provisions "to the extent necessary to satisfy the needs of the agency *or as authorized by law*."  FAR § 11.002(a)(1)(ii) (emphasis added); *accord Savantage Fin. Servs., Inc. v. United States*, 86 Fed. Cl. 700, 704 (2009); *ASC Grp., Inc.*, B-407136, Nov. 15, 2012, 2012 CPD ¶ 318 at 3.

HUD is authorized by law under the Housing Act to contract with PHAs, and HUD has clearly chosen to implement its Section 8 program through PHAs.  The term "PHA" is defined in the Housing Act (42 U.S.C. § 1437a(b)(6)(A)) and is found repeatedly in HUD's regulations implementing its Section 8 project based housing program.  *See* 24 C.F.R. Part 880.  The term

---

[3]   HUD's statement in a filing at the GAO that the FAR § 6.302-5(c) sole-source exception did not apply in this case (AR 1163) in no way undercuts MassHousing's argument.  First, MassHousing is here arguing that a different subsection, specifically FAR § 6.302-5(a), permits HUD to sole source these awards.  Furthermore, the subsection HUD cited -- FAR § 6.302-5(c) -- only applies when a statute *requires* an agency to award a contract to a specified source.

PHA is equally pervasive in HUD's regulations implementing other housing programs. *See* 24 C.F.R. Parts 880, 881, 941, 982. Clearly, it is HUD's intent to implement its Section 8 public housing programs through PHAs and not through private contractors.

A PHA's performance of HAP contract administration services is not the same as a private contractor's performance of other, routine services procured by HUD, such as realty closing or property management services. Such other services are purely commercial in nature and procured using HUD's general authority to contract. In contrast, a PHA stands to the public as the state governmental agency in charge of managing the federal government's housing assistance. In addition to paying assistance to public housing owners under the Housing Act, a PHA accepts and denies applications for housing, oversees the housing stock, adjudicates disputes regarding rent adjustments, and adjudicates evictions. AR 1376, 1381, 1388; *see also Basco*, 514 F.3d 1177 (Section 8 housing participant sued PHA for wrongful eviction); *Woods*, 2010 WL 8781972 (Section 8 housing participant sued PHA for termination of assistance). Based both on statute and public policy, HUD is correct in limiting HAP contract administrative services to PHAs.

In addition, limiting HUD's procurement of HAP contract administrative services to PHAs will not necessarily result in sole-source contracts nationwide. Certain states whose state-wide PHAs are disinclined to provide HAP contract administrative services already allow out-of-state PHAs to provide those services. For those states, a competition limited to PHAs would pit out-of-state PHAs against one another for the contract.[4] Other states, such as Massachusetts, have two or more state-wide PHAs, so a competition between them could

---

[4] HUD is authorized to contract with other parties in states where there is no PHA or the in-state PHA is not competent or able to perform the services required. 42 U.S.C. § 1437f(b)(1).

11

result.[5]

Finally, HUD has a significant interest in ensuring that PHAs can perform HAP contract administrative services without interference and undue delay.  While MassHousing presented this argument in its reply brief in the context of the questionable legality of out-of-state PHAs operating as in-state PHAs, the same holds true for private contractors.  A state, having authorized one or more PHAs to act as a state-wide government agency, may resist or reject an attempt by a private contractor, let alone an out-of-state PHA, to operate as a private government agency in the state.  HUD's reasonable apprehension of litigation associated with either out-of-state PHAs or private contractors justifies HUD's decision to limit its procurement for HAP contract administrative services to PHAs.

Respectfully submitted,

Date: March 15, 2013

By:  /s/ Gabriel E. Kennon
Andrew Mohr
Gabriel E. Kennon
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW, Suite 504
Washington, DC 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)
gkennon@cohenmohr.com

Counsel of Record for Intervenor
Massachusetts Housing Finance Agency

---

[5] The second state-wide PHA in Massachusetts is the Department of Housing and Community Development ("DHCD").

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 15, 2013, a copy of the foregoing MASSACHUSETTS HOUSING FINANCE AGENCY'S SUPPLEMENTAL BRIEF was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                            /s/ Gabriel E. Kennon
                                              Gabriel E. Kennon