IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | |
|---|---|
| **CMS CONTRACT MGMT. SVCS., ET AL.,**<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>**THE UNITED STATES,**<br><br>　　　　　　　　　Defendant. | Case Nos. 12-852C, 12-853C, 12-862C,<br>12-864C, and 12-869C<br><br>Judge Wheeler |

### PLAINTIFF SOUTHWEST HOUSING COMPLIANCE CORPORATION'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S REQUEST FOR SUPPLEMENTAL BRIEFING

Plaintiff Southwest Housing Compliance Corporation ("SHCC"), through undersigned counsel, hereby submits this Supplemental Brief in response to the Court's request for supplemental briefing issued on March 5, 2013.

　　　　　　　　　　　　　　　　　　　Richard J. Vacura
　　　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　　　1650 Tysons Blvd., Suite 400
　　　　　　　　　　　　　　　　　　　McLean, VA  22102
　　　　　　　　　　　　　　　　　　　(703) 760-7764
　　　　　　　　　　　　　　　　　　　(703) 760-7349 (fax)
　　　　　　　　　　　　　　　　　　　*Counsel of Record for Plaintiff Southwest Housing Compliance Corporation*

Of Counsel:
Tina D. Reynolds
K. Alyse Latour
MORRISON & FOERSTER LLP

Dated: March 15, 2013

**TABLE OF CONTENTS**

**ARGUMENT** ...............................................................................................................................1

    1.  HUD DOES NOT HAVE THE AUTHORITY TO ADMINISTER THE SECTION 8 PROJECT-BASED RENTAL ASSISTANCE AT ISSUE IN THIS CASE THROUGH COOPERATIVE AGREEMENTS...................................................... 1

    2.  THEORETICALLY, HUD COULD EFFECT A CONVERSION OF PRIVATE-OWNER/HUD PROJECTS TO PRIVATE-OWNER/PHA PROJECTS PURSUANT TO 24 CFR § 880.505(C), BUT HUD HAS NOT DONE SO HERE ....... 4

    3.  HUD MAY LEGALLY LIMIT COMPETITION FOR THE PBCA CONTRACTS TO PHAs BY GIVING GREATER WEIGHT TO THE KNOWLEDGE AND EXPERIENCE OF THE PHAs. ...................................................... 6

    4.  HUD HAS TRANSFERRED MANY OF THE PRIVATE-OWNER/PHA PROJECTS TO THE PBCA PORTFOLIO, AND CONTINUES TO DO SO ................. 7

**CONCLUSION** .........................................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Savantage Fin. Servs. v. United States*,
   86 Fed. Cl. 700, 704 (Fed. Cl. 2009), *aff'd*, 595 F.3d 1282 (Fed. Cir. 2010) ....................... 6, 7

**PROTESTS**

*Dayton T. Brown, Inc.*,
   B-402256, Feb. 24, 2010, 2010 CPD ¶ 72 ............................................................................... 7

*PDL Toll*,
   B-402970, Aug. 11, 2010, 2010 CPD ¶ 191 ............................................................................. 7

**STATUTES**

Multifamily Assisted Housing Reform and Affordability Act of 1997, Pub. L. No. 105-
   65, Title V, § 524, 111 Stat. 1344 (1997) (codified at 42 U.S.C. § 1437f note)
   ("MAHRA") ........................................................................................................................ 3, 4

Housing and Community Development Act of 1974, Pub. L. No. 93-383, § 201(a), 88
   Stat. 633, 662 (1974) (the "1974 Act") ................................................................................ 1, 2

**OTHER AUTHORITIES**

24 C.F.R. § 880.505 ............................................................................................................... 2, 4, 5, 6

48 C.F.R. § 6.101(b) ...................................................................................................................... 6

48 C.F.R. § 11.002(a)(1)(ii) .......................................................................................................... 6

48 C.F.R. § 15.304(b) .................................................................................................................... 7

# ARGUMENT

This Supplemental Brief addresses the questions posed by the Court on March 5, 2013 and reiterates that the U.S. Department of Housing and Urban Development ("HUD") must use a procurement contract to obtain the contract administration services for the Section 8 project-based rental assistance solicited under the 2012 NOFA.

1. **HUD DOES NOT HAVE THE AUTHORITY TO ADMINISTER THE SECTION 8 PROJECT-BASED RENTAL ASSISTANCE AT ISSUE IN THIS CASE THROUGH COOPERATIVE AGREEMENTS.**

Section 8(b)(2) of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, § 201(a), 88 Stat. 633, 662 (1974) (the "1974 Act"), consists of two sentences, each of which provides separate authority for the administration of Section 8 project-based rental housing assistance. The first sentence of Section 8(b)(2) states, in part, that "the Secretary is authorized to make assistance payments pursuant to contracts with owners or prospective owners who agree to construct or substantially rehabilitate housing in which some or all of the units shall be available for occupancy by lower-income families in accordance with the provisions of this section." 1974 Act, § 8(b)(2). The second sentence of Section 8(b)(2) states that "[t]he Secretary may also enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners or prospective owners." *Id.* Although the second sentence of Section 8(b)(2) gives HUD the authority to administer some of the assistance through Annual Contributions Contracts ("ACCs"), which may be properly characterized as "cooperative agreements" since their principal purpose is to provide assistance to the PHAs and the project owners, this sentence does not grant HUD the authority to administer the assistance at issue under the 2012 NOFA for the Project Based Contract Administrator ("PBCA") Program.

1

Under Section 8(b)(2), HUD may provide for assistance through two possible means. As directed by the first sentence of Section 8(b)(2), HUD may provide the assistance directly to the project owners (the "Private-Owner/HUD Projects"). 1974 Act, § 8(b)(2). Alternatively, under the authority conferred in the second sentence of Section 8(b)(2), HUD may grant a PHA the ability to provide housing assistance directly to owners pursuant to an agreement between HUD and the PHA (the "Private-Owner/PHA Projects"). *Id.*

Pursuant to the authority in the first sentence of Section 8(b)(2), HUD administers approximately 20,000 Private-Owner/HUD Projects. AR 428. In the Private-Owner/HUD Projects, HUD enters into a housing assistance payment ("HAP") contract directly with the project owner that provides for the housing subsidies. The Private-Owner/HUD Projects make up the vast majority of the projects that are the subject of the 2012 NOFA and included in the PBCA portfolio. As PBCAs, the PHAs perform contract administration services for these Private-Owner/HUD Projects.

The authority granted to HUD in the second sentence of Section 8(b)(2) permits HUD to enter into ACCs with PHAs through which HUD provides the housing subsidies to the PHAs. The PHAs then independently enter into HAP contracts with the project owners. As Traditional Contract Administrators ("TCAs") under these ACCs, the PHAs have primary responsibility for the administration of the HAP contracts. *See* 24 C.F.R. § 880.505(a). Under this authority, approximately 4,200 Private-Owner/PHA Projects were created. AR 428.

As noted above, while the second sentence of Section 8(b)(2) confers authority on HUD to enter into ACCs with PHAs for the Private-Owner/PHA Projects, it does not provide the same authority for the PBCA services that HUD is procuring under the 2012 NOFA. This conclusion is based on the fundamental differences between the Private-Owner/HUD and the Private-

Owner/PHA Projects, in particular, the very different roles of the PHA under each of these Projects.  Thus, a traditional ACC (as used in the Private-Owner/PHA Projects) may be labeled a "cooperative agreement" because its principal purpose is to provide assistance to the ACC, but a PBCA ACC cannot be deemed a cooperative agreement because it does not provide assistance to the PHA, but rather provides for payment of an administrative fee in exchange for the performance of contract administration services.  In order to use the authority in the second sentence of Section 8(b)(2) to issue cooperative agreements rather than contracts, HUD would have to fundamentally change the nature of the services the PHA provides under the PBCA Program.

Moreover, Congress expressed its intent to maintain the distinct nature of these projects through its silence in the renewal authority for Section 8(b)(2).  The Multifamily Assisted Housing Reform and Affordability Act of 1997, Pub. L. No. 105-65, 111 Stat. 1344 (1997) (codified at 42 U.S.C. §1437f note) ("MAHRA"), was enacted to renew HUD's authority to provide assistance under Section 8(b)(2).  MAHRA did not transform the Private-Owner/HUD Projects to Private-Owner/PHA Projects.  In fact, MAHRA did nothing more with respect to the Section 8(b)(2) assistance other than simply authorize the Secretary of HUD to "use amounts available for the renewal of assistance under Section 8…"  MAHRA, §524(a).  If Congress had intended to effect a transformation or otherwise change the nature of the Private-Owner/HUD Projects, it would have provided for such.  Instead, Congress remained silent, signaling its desire to maintain the *status quo*.

> **2. THEORETICALLY, HUD COULD EFFECT A CONVERSION OF PRIVATE-OWNER/HUD PROJECTS TO PRIVATE-OWNER/PHA PROJECTS PURSUANT TO 24 CFR § 880.505(C), BUT HUD HAS NOT DONE SO HERE.**

As discussed above, MAHRA did not change the character of HUD's authority to administer assistance. Thus, the administration of the Private-Owner/HUD Projects remains HUD's responsibility under the original authority used to enter into the project. Although, theoretically, HUD could convert a Private-Owner/HUD Project to a Private-Owner/PHA Project pursuant to 24 C.F.R. § 880.505(c), it has never done so here. Moreover, given the steps required for a potential conversion, it is clear that the authority to convert a project was intended to be determined on a case-by-case basis (e.g., non-performance by an owner or a PHA) rather than a larger programmatic shift.

24 C.F.R. § 880.505(c) states, in part, that "[a]ny project may be converted from one ownership/contractual arrangement to another (for example, from a private-owner/HUD to a private-owner/PHA project) if: (1) The owner, the PHA and HUD agree, (2) HUD determines that conversion would be in the best interest of the project, and (3) In the case of conversion from a private-owner/HUD to a private-owner/PHA project, contract authority is available to cover the PHA fee for administering the Contract." Due to the fundamental differences between Private-Owner/HUD and Private-Owner/PHA Projects, a conversion would involve more than a mere transfer in name.

To wit, since PHAs are primarily responsible for administration of the assistance in Private-Owner/PHA Projects, a conversion to this type of project would require HUD to substantially relinquish its duties and responsibilities for administering the project-based rental assistance to the PHAs. This appears to be at odds with HUD's intent to maintain substantial control over the administration of the project-based rental assistance in the PBCA Program. As

4

more fully discussed in SHCC's previous briefs, as PBCAs, the PHAs merely perform contract administration services; they do not have the ultimate responsibility for administering the rental assistance (or the duties that are associated with such responsibility). *See* SHCC Jan. 18, 2013 Opposition to MTD at 11-19; *see also* SHCC Feb. 13, 2013 Corrected Reply Brief at 11-14. HUD's own words even describe the PBCA's scope of responsibilities as Contract Administrator as "more limited than that of a Traditional Contract Administrator." AR 2285.

In addition, the PBCA Program instructs PHAs to act simply as a conduit for the housing subsidies. A conversion to a true Private-Owner/PHA Project would require HUD to give the housing subsidies to the PHAs to administer, resulting in an ACC that would transfer both the administrative fee *and the assistance* to the PHA. Furthermore, a conversion would require the agreement of HUD, the PHA, and the private-owner. 24 C.F.R. §880.505(c)(1). HUD has not taken any of these actions. For this reason, it is evident that HUD has not effected a conversion of the Private-Owner/HUD Projects to Private-Owner/PHA Projects under 24 C.F.R. §880.505(c).

In fact, the history of the PBCA Program demonstrates that HUD has attempted to move away from the Private-Owner/PHA Project model. As the Court noted, the 1999 RFP for the PBCA Program stated that 4,200 HAP contracts were then being administered by PHAs, but that "[w]hen HUD renews the[se] expired project-based HAP contracts…HUD generally expects to transfer contract administration of the renewed HAP Contracts to the Contract Administrator (CA) it selects through this RFP for the service area where the property is located." March 5, 2013 Order, Question 4 (citing AR 428). At the time that the prior ACCs with the PHAs for the Private-Owner/PHA Projects began to expire, HUD acquired these projects from the PHAs in a departure from the true Private-Owner/PHA Project model. This shift allowed HUD to assert

greater control over these projects, and permitted HUD to then obtain the services of the PHAs as PBCAs rather than as TCAs.  As a result, the 4,200 Private-Owner/PHA Projects are not treated any differently than Private-Owner/HUD Projects.

Consistent with HUD's movement towards more complete authority over the administration of the project-based rental assistance, HUD exercised its authority in 24 C.F.R. § 880.505(a) to create the PBCA Program and to "contract with another entity for the performance of some or all of its contract administration functions."  24 C.F.R. § 880.505(a).  Accordingly, since the principal purpose of the PBCA ACCs is to obtain services from the PHA that HUD would otherwise be required to perform, HUD must use a procurement contract.

### 3. HUD MAY LEGALLY LIMIT COMPETITION FOR THE PBCA CONTRACTS TO PHAs BY GIVING GREATER WEIGHT TO THE KNOWLEDGE AND EXPERIENCE OF THE PHAs.

We have previously briefed the Court regarding the utter lack of record regarding any consideration HUD may have given to limitations or restrictions on competition in this case.  If, however, the Court finds that the PBCA services sought by HUD must be obtained through a procurement contract subject to the Competition in Contracting Act ("CICA"), HUD would have a reasonable basis to restrict competition to PHAs.

CICA, as implemented by the Federal Acquisition Regulation, requires contracting officers to use competitive procedures "that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently."  48 C.F.R. § 6.101(b).  Restrictive provisions are permissible, but only "to the extent necessary to satisfy the needs of the agency or as authorized by law."  48 C.F.R. § 11.002(a)(1)(ii); *see also Savantage Fin. Servs. v. United States*, 86 Fed. Cl. 700, 704 (Fed. Cl. 2009), *aff'd*, 595 F.3d 1282 (Fed. Cir. 2010) (finding that the U.S. Department of Homeland Security could permissibly

restrict full and open competition by requiring an offeror to have an integrated asset, acquisition, and financial management systems solution which the plaintiff had alleged effectively resulted in a sole source award).  For almost 15 years, HUD has limited awards under the PBCA Program to PHAs.  The PHAs possess specialized knowledge of the PBCA Program and the functions of a contract administrator and are the entities (other than HUD) that have adequate experience in performing these tasks.  Based on the PHAs' specialized knowledge and unique experience, HUD could reasonably limit the competition for the PBCA Program to the PHAs.  *See Savantage*, 595 F.3d at 1286.

To that end, agency acquisition officials have broad discretion in selecting the evaluation factors that will be used in an acquisition, and the use of particular evaluation factors will not be disturbed so long as the factors used reasonably relate to the agency's needs in choosing a contractor that will best serve the government's interest.  *Dayton T. Brown, Inc.*, B-402256, Feb. 24, 2010, 2010 CPD ¶ 72; *PDL Toll*, B-402970, Aug. 11, 2010, 2010 CPD ¶ 191; *see also* 48 C.F.R. § 15.304(b).  In this case, HUD could create an evaluation scheme pursuant to which greater weight is given to offerors with the technical knowledge about how to perform contract administration services for project-based rental assistance programs and that favors those with prior experience as a PBCA.  The effect of such an evaluation scheme could reasonably and legally limit the competition for the PBCA Program to PHAs.

**4.     HUD HAS TRANSFERRED MANY OF THE PRIVATE-OWNER/PHA PROJECTS TO THE PBCA PORTFOLIO, AND CONTINUES TO DO SO.**

As discussed above in Section 2, HUD acquired control over 4,200 Private-Owner/PHA Projects and transferred the contract administration of these projects to the PBCAs.  It is SHCC's understanding that HUD continues to transfer remaining Private-Owner/PHA Projects to the PBCA portfolio.

## CONCLUSION

For the foregoing reasons and those set forth in SHCC's prior briefing, SHCC requests that this Court deny the Government's January 4, 2013 Motion to Dismiss and Request for Judgment on the Administrative Record, grant SHCC's January 18, 2013 Motion for Judgment on the Administrative Record, permanently enjoin Defendant from making any awards under the 2012 NOFA, and grant SHCC its bid and proposal costs in connection with this Protest.

DATED:  March 15, 2013

                                      Respectfully submitted,

                                      <u>s/ Richard J. Vacura</u>
                                      Richard J. Vacura
                                      MORRISON & FOERSTER LLP
                                      1650 Tysons Blvd., Suite 400
                                      McLean, VA 22102
                                      (703) 760-7764
                                      (703) 760-7777 (fax)

                                      *Counsel of Record for Plaintiff Southwest Housing*
                                      *Compliance Corporation*

Of Counsel:

Tina D. Reynolds
K. Alyse Latour
MORRISON & FOERSTER LLP
1650 Tysons Blvd., Suite 400
McLean, VA 22102
(703) 760-7700

va-390506